JNO. T. SCOBY, Administrator of W. BRANCH, Deceased, *v.* W. WOODS, *et als.*

PRINCIPAL AND AGENT. *Liability of Agent.* Where an agent takes charge of personal property, with the understanding that he is to dispose of it as best he can, and he sells some of it for cash, and for other distinct articles he takes notes, which his principal refuse to receive, the agent will be liable to the principal for the value of the property, if the agent assumes control over the notes, and makes no effort for many years to show that they are the property of his principal, and his representatives are unable to account for the notes, the Court say: "We may fairly assume that Branch had acquiesced in the refusal of Hamblin to receive the notes, had gone on in the effort to collect them for his re-imbursement, and thereby made himself responsible for the money to his principal."

FROM WILSON.

Appeal from the Chancery Court. CHAS. G. SMITH, Chancellor.

Jno. T. Scoby, Adm'r of W. Branch, Deceased, *v.* W. Woods, *et als.*

No brief appears for Jno. T. Scoby.

ANDREW B. MARTIN and B. J. TURNER for Wm. D. Hamblin, one of the defendants.

FREEMAN, J., delivered the opinion of the Court.

The only question in this case is, whether the estate of Branch is liable for the value of the mules taken South by Branch, about the 24th of December, 1860, to be sold for Hamblin.

We think the proof shows satisfactorily that Branch took charge of three mules, as is claimed, and was to sell them on the best terms he could, and to receive $10 each for selling them, Hamblin paying all expenses. One mule was sold for cash, and the money accounted for, and expenses settled. The other two mules were sold on a credit, one for $130, the other for $165. The contest now is, as to these last mentioned mules.

The proof shows, that Branch, when he came back in February, 1861, saw Hamblin and offered him the notes, which he refused to accept. It further shows that (since the war, probably, at any rate, the fact is that way) the notes were in the South for collection, sent there, as we assume, by Branch. It is not shown whether the notes were taken payable to Branch or to Hamblin.

The Chancellor held, that Hamblin was entitled to a decree for the price of the mules sold by Branch, and that Branch, or his administrator, should have the notes for his re-imbursement.

While, as a matter of strict law on the above facts, it might be difficult to sustain this view of the legal rights of the parties, yet, we think, in view of the other facts, that after the refusal of the notes, Branch had sent them South for collection, assuming the control over them, and no effort is shown to insist on their being Hamblin's for so many years, and the failure of the administrator to be able to hand the notes over to Hamblin, that we may fairly assume that Branch had acquiesced in the refusal of Hamblin to receive the notes, had gone on in the effort to collect them for his re-imbursement, and thereby made himself responsible for the money to his principal. Such is the fair inference from his conduct, and on this ground we think the Chancellor's decree ought to be affirmed In any aspect of the case, Branch was bound to have the notes forthcoming, or be responsible for them to his principal.

The equity of the cause is reached. Let the decree be affirmed, with costs.